UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARL AARON SMITH,                       :
    Plaintiff,                      :
                                    :
v.                                      : Civil No. 3:15CV01166 (AWT)
                                    :
CAROLYN W. COLVIN,                      :
COMMISSIONER OF SOCIAL                  :
SECURITY,                               :
    Defendant.                      :

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE OR REMAND AND THE
DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

      This is an administrative appeal following the denial of
plaintiff Carl Aaron Smith's application for disability
insurance benefits ("DIB") and supplemental security income
benefits ("SSI")[1]  It is brought pursuant to 42 U.S.C. §§ 405(g)
and 1382(c)(3).

---

[1] Under the Social Security Act ("SSA"), the "Commissioner of
Social Security is directed to make findings of fact, and
decisions as to the rights of any individual applying for a
payment under [the SSA]."  42 U.S.C. § 405(b)(1).  The
Commissioner's authority to make such findings and decisions is
delegated to administrative law judges ("ALJs").  See 20 C.F.R.
§ 404.929.  Claimants can in turn appeal an ALJ's decision to
the Social Security Appeals Council.  20 C.F.R. § 404.967.  If
the appeals council declines review or affirms the ALJ opinion,
the claimant may appeal to the United States District Court.
See 20 C.F.R. § 404.981.  Section 205(g) of the Social Security
Act provides that "[t]he court shall have power to enter, upon
the pleadings and transcript of the record, a judgment
affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  42 U.S.C. § 405(g).

The plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration ("Commissioner"), or in the alternative, an order remanding the case for a rehearing.  The Commissioner, in turn, has moved for an order affirming the decision.

The plaintiff claims that the ALJ improperly concluded that the plaintiff did not have an impairment that meets or equals a listed impairment and improperly applied the treating physician rule when making the Listings and Residual Functional Capacity ("RFC") determinations.

For the reasons set forth below, the plaintiff's motion for remand is being granted, and the Commissioner's motion for an order affirming the ALJ's decision is being denied.

I.   **FACTS**

A.   **Administrative Proceedings**

An examination of the record discloses the following:  On July 19, 2011, the plaintiff filed an application for DIB and SSI benefits for an alleged disability that commenced on November 1, 2009 and continued through December 31, 2011, the date on which he was last insured.[2]  (R. 11-12, 254, 261.)  The

---

[2] In order to be entitled to disability benefits, a plaintiff must "have enough social security earnings to be insured for disability, as described in § 404.130."  20 C.F.R. § 404.315(a)(1).

alleged onset date was amended to October 25, 2011 at a hearing on October 16, 2013.  (R. 11, 39.)

On March 2, 2012, a disability adjudicator denied the plaintiff's initial request for DIB and SSI benefits (R. 11, 95, 114.) and on June 27, 2012 denied his request for reconsideration. (R. 11, 159-172.)

On October 16, 2013, the plaintiff appeared with counsel for a hearing before an ALJ.  (R. 33-77.)  On January 27, 2014, the ALJ issued a decision denying benefits.  (R. 8-32.)  On June 5, 2015, the appeals council denied the plaintiff's request for review thereby making the ALJ's decision final.  (R. 1-7.)  This appeal followed.

**B.    The Treating Physician's Opinions**

Dr. Kristin Giannini is a general practice family physician and the plaintiff's primary treating physician.  In evidence are her records dated 1/1/06 to 8/18/11 (R. 470-710), 9/6/11 to 3/13/12 (R. 748-69) and the Medical Source Statement of Ability to Do Work Related Activities (Physical) ("MSS") dated 9/26/13 (R. 773-79, 784-88).

As to ambulation, Dr. Giannini's 9/26/13 MSS indicates under "Sitting/Standing/Walking" that the plaintiff can walk for zero minutes but also that he does not require the use of a cane to ambulate.  (R. 774, 785.).  With regard to these opinions, the MSS asks the physician to

3

> [i]dentify the particular medical or clinical findings
> (i.e., physical exam findings, x-ray findings, laboratory
> test results, history, and symptoms including pain, etc.)
> which support [the] assessment or any limitations and why
> the findings support the assessment.

(R. 774, 785.)  Dr. Giannini left this area blank.  **Dr. Giannini
states in the MSS that the plaintiff cannot "walk a block at a
reasonable pace on rough or uneven surfaces".** (R. 786 (emphasis
added).)  The MMS asks the physician to "identify the medical
findings that support this assessment and why the finding[s]
support the assessment".  (R. 778.)  Dr. Giannini also left this
area blank.  She did not identify any medical or clinical
findings or rationale to support these assessments.

In the same MSS, Dr. Giannini noted that the plaintiff
could shop, travel independently, use public transportation, and
climb a few steps at a reasonable pace with the use of a hand
rail.  (R. 778.)

## C.   The ALJ's Decision

### 1.   The Listings Determination

The ALJ found that the plaintiff did "not present with an
impairment that, either singly or in combination, medically
meets or equals the severity requirements of any listed
impairments".  (R. 15.)  He reasoned that

> [a]lthough there is evidence of a gross anatomical ankle
> deformity with chronic joint pain/stiffness and joint space
> narrowing, **there is no documentation in the medical
> evidence of record that the claimant's impairment involves**

4

> **one major peripheral weight bearing joint, resulting in the
> inability to ambulate effectively.** . . . [T]he claimant's
> physical examinations show that he presented with
> tenderness and swelling of his left ankle, requiring the
> use of a brace. However, the claimant does not require the
> use of a cane. Although he has an antalgic gait, he is
> able to ambulate independently. Therefore, the undersigned
> finds that the claimant's ankle impairment does not meet or
> medically equal the criteria of listing 1.02. . . .

(R. 15.) (emphasis added). Also, the ALJ concluded that the

plaintiff had "mild restriction in his activities of daily

living." (R. 16.) He reasoned that

> a typical day involve[ed] taking a shower, cleaning his
> room, watching Sports Center on television, helping his
> mother around the house, helping her to the front door, and
> driving her to the store. . . At a February 23, 2012
> psychological consultative evaluation, the claimant
> reported that he was able to shower daily, brush his teeth
> daily, cook for himself, go grocery shopping, and clean his
> room. Exhibit 9F. He admitted that he was independent in
> his personal care skills. He also admitted to watching
> sports, fishing, and hunting shows. He stated the he
> drives twice a week to go grocery shopping and also drove
> himself to the hearing. As the claimant "is able to
> independently care for himself and help his elderly mother
> at times, the undersigned finds that he has no more than a
> mild restriction in his activities of daily living."

(R. 16.) In making the Listings determination, the ALJ did not

identify the treating physician's opinions or the factors

considered in weighing those opinions, and the ALJ did not give

the required "good reason" for rejecting her Listings opinions.

2.   **RFC**

As to the RFC determination the ALJ found that the

plaintiff

> has the residual functional capacity to perform light work
> as defined in 20 CFR 404.1567 (b) and 416.967(b) except he
> can stand/walk for up to 4 hours in an 8-hour workday, sit
> for up to 6 hours in an 8-hour workday, and requires a
> sit/stand option as well as the use of a cane when walking
> on uneven surfaces.  He can occasionally climb ramps and
> stairs, balance, stoop, kneel, crouch and crawl, and never
> climb ladders, ropes or scaffolds.  He should avoid
> concentrated exposure to fumes, odors, dust, gases, and
> poor ventilation.  He is further limited to simple tasks.

(R. 18.)  His reasoning was as follows:

> As required, the undersigned has considered the
> opinions proffered by all acceptable medical sources
> in assessing the claimant's residual functional
> capacity.  First, the undersigned considered the
> opinions of the claimant's treating sources.  In a
> July 25, 2013 Medical Letter, primary care physician
> Dr. Kristin Giannini, opined that the claimant has
> several medical issues that prevent[s] him from
> working at least for the next year, including disc
> problems in his back that develops numbness in his
> legs, new tendon ruptures of his left ankle, extreme
> anxiety related to his medical issues, and asthma that
> exacerbates very easily and has led to
> hospitalizations. Exhibit 12F.  She explained that the
> only position that alleviates the back pain and
> numbness in the legs is lying down and that he was
> prescribed narcotic pain medicine for the excruciating
> pain he experiences with walking.  In a September 26,
> 2013 Medical Source Statement, Dr. Giannini specified
> that the claimant is able to lift and carry up to 10
> pounds and sit for 4 hours in an 8-hour workday, but
> cannot stand or walk.  Exhibits 13F, 16F.  She also
> found that the claimant can occasionally reach
> overhead bilaterally, never do all other reaching or
> pushing/pulling, and occasional operation of foot

controls bilaterally. She limited the claimant to occasional operation of a motor vehicle and no exposure to unprotected heights, moving mechanical parts, humidity and wetness, extreme heat and cold, and dust, odors, fumes, and pulmonary irritants. Lastly, she limited the claimant to no climbing, balancing, stooping, kneeling, crouching and crawling. The undersigned affords little weight to Dr. Giannini['s] opinions as they are inconsistent with the overall medical evidence and lacking in basis. She cites problems such as extreme anxiety and asthma that is easily exacerbated. However, the evidence shows that the claimant has been treated for a long time with Klonopin, which suggest that his symptoms are controlled. This is also an area of medicine outside her expertise, which makes her opinion less reliable. Additionally, the claimant has not needed emergency treatment for his asthma since his amended alleged onset date and is able to walk on level surfaces and climb a flight of stairs. The standing, walking and postural limitations that she has given the claimant are inconsistent with his activities of daily living, which as stated above involves caring for himself and helping his mother. Furthermore, she has given the claimant manipulative limitations but there is no evidence that the claimant has problems using his hands. She limited the claimant to only occasional use of a motor vehicle but the claimant did not testify to any problems driving. In fact, he indicate[s] that he is able to drive to the grocery store and that he drove himself to the hearing.

(R. 23, 24.)

## II. LEGAL STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.§ 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence,
[are] conclusive . . . ."  42 U.S.C. § 405(g).  Accordingly, the
court may not make a de novo determination of whether a
plaintiff is disabled in reviewing a denial of disability
benefits.  Id.; Wagner v. Sec'y of Health & Human Servs., 906
F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is
to ascertain whether the Commissioner applied the correct legal
principles in reaching his conclusion, and whether the decision
is supported by substantial evidence.  Johnson v. Bowen, 817
F.2d 983, 985 (2d Cir. 1987).  Therefore, absent legal error,
this court may not set aside the decision of the Commissioner if
it is supported by substantial evidence.  Berry v. Schweiker,
675 F.2d 464, 467 (2d Cir. 1982).  Further, if the
Commissioner's decision is supported by substantial evidence,
that decision will be sustained, even where there may also be
substantial evidence to support the plaintiff's contrary
position.  Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

     The Second Circuit has defined substantial evidence as
"'such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion.'"  Williams v. Bowen, 859 F.2d
255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S.
389, 401 (1971)).  Substantial evidence must be "more than a
scintilla or touch of proof here and there in the record."
Williams, 859 F.2d at 258.

The SSA establishes that benefits are payable to
individuals who have a disability.  42 U.S.C. § 423(a)(1).  "The
term 'disability' means . . . [an] inability to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impairment . . . ."  42 U.S.C. §
423(d)(1).  In order to determine whether a claimant is disabled
within the meaning of the SSA, the ALJ must follow a five-step
evaluation process as promulgated by the Commissioner.[3]

In order to be considered disabled, an individual's
impairment must be "of such severity that he is not only unable
to do his previous work but cannot . . . engage in any other

[3] The five steps are as follows: (1) The Commissioner considers
whether the claimant is currently engaged in substantial gainful
activity; (2) if not, the Commissioner considers whether the
claimant has a "severe impairment" which limits his or her
mental or physical ability to do basic work activities; (3) if
the claimant has a "severe impairment," the Commissioner must
ask whether, based solely on the medical evidence, the claimant
has an impairment that "meets or equals" an impairment listed in
Appendix 1 of the regulations. If the claimant has one of these
enumerated impairments and meets the duration requirements, the
Commissioner will find him disabled, without considering
vocational factors such as age, education, and work experience;
(4) if not, the Commissioner then asks whether, despite the
claimant's severe impairment, he or she has the residual
functional capacity to perform his or her past work; and (5) if
the claimant is unable to perform his or her past work, the
Commissioner then determines whether there is other work which
the claimant could perform.  20 C.F.R. § 416.920(a)(4)(i)—(v).
The Commissioner bears the burden of proof on this last step,
while the claimant has the burden on the first four steps.
Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Human
Servs., 360 F. App'x 240, 243 (2d Cir. 2010) (citing 68 Fed.
Reg. 51155 (Aug. 26, 2003)); Poupore v. Astrue, 566 F.3d 303,
306 (2d Cir.2009) (per curiam).

kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[4]

## III. DISCUSSION

The plaintiff argues that the ALJ improperly concluded that the plaintiff's ankle condition did not meet or medically equal listed impairment 1.02 because the devices that the plaintiff used were indicative of ineffective ambulation (AFO brace, a cane when walking on uneven surfaces, and both assistive devices in combination); the plaintiff would have met one of the examples listed in 1.00B2b(2) had the ALJ considered the treating physician's opinion that the plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces; and the ALJ failed to apply the treating physician rule correctly.  The defendant argues that the plaintiff did not satisfy the requirements for the listed impairment because he did not use assistive devices that limited functioning of both upper

---

[4]  The determination of whether such work exists in the national economy is made without regard to (1) "whether such work exists in the immediate area in which [the claimant] lives;" (2) "whether a specific job vacancy exists for [the claimant];" or (3) "whether [the claimant] would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).

extremities and that substantial evidence[5] supported the ALJ's conclusions.

### A.    Listed Impairments

"For a claimant to show that his impairment matches a Listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530 (1990).

The plaintiff bears the burden of showing that an impairment satisfies the specified criteria.   <u>Id.</u>

In this case, the listing at issue is 1.02, which states:

> Major dysfunction of a joint(s) (due to any cause): Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.02.

The regulatory standard for the criterion "inability to ambulate effectively" is as follows:

> 2. How We Define Loss of Function in These Listings

---

[5]  Remand to address legal errors may result in additional evidence being put into the record and thus change what constitutes "substantial evidence"; therefore, the court does not reach this issue.

a. General. Regardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, . . . We will determine whether an individual can ambulate effectively . . . based on the medical and other evidence in the case record, generally without developing additional evidence about the individual's ability to perform the specific activities listed as examples in 1.00B2b(2) . . . .

b. What We Mean by Inability To Ambulate Effectively

(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, **examples of ineffective ambulation include, but are not limited to,** the inability to walk without the use of a walker, two crutches or two canes, **the inability to walk a block at a reasonable pace on rough or uneven surfaces,** the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 1.00B2a, b(1),

b(2)(emphasis added).

### 1.  Devices

As to devices, the plaintiff argues that the ALJ's finding that the "plaintiff does not require the use of a cane . . . . [and] is able to ambulate independently" (R. 15) is erroneous because he is required to ambulate with an AFO brace; that a finding of independent ambulation contradicts assigning an RFC that requires the plaintiff to use a cane when walking on uneven surfaces[6]; and that the use of two devices, an AFO brace for ambulation and a cane to ambulate on uneven surfaces, would be tantamount to a finding of ineffective ambulation.  The defendant argues that the plaintiff failed to satisfy the requirements of Listing 1.00B2b(1) because he failed to demonstrate that his lower body functioning requires the use of a hand-held assistive device that limits functioning of both upper extremities.  However, the full definition of "inability to ambulate effectively"[7] and the Commissioner's Federal

_____

[6] Unlike effective ambulation requirements for activities of daily living under 1.02, the RFC assesses an individual's ability to do sustained work on a regular and continuing basis under specific circumstances such as ambulation on uneven surfaces under certain working conditions 8-hours a day, five days a week.  See Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999).  The court does not reach this issue at this time because this case is being remanded for other reasons.  The ALJ may address this distinction directly on rehearing, if necessary.
[7] Listing 1.00B2a notes that functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, . . . based on the medical and other evidence . . . .  Listing 1.00B2b requires "an extreme limitation of the ability to walk; i.e., an

Register commentary make clear that use of devices is not
dispositive.[8]

### 2.   *Listed Examples*

The plaintiff also argues that if the ALJ had considered
the treating physician's opinion that the plaintiff was unable
to walk a block at a reasonable pace on rough or uneven
surfaces, he would have found ineffective ambulation because it

---

impairment[] that interferes very seriously with the
individual's ability to independently initiate, sustain, or
complete activities." 20 C.F.R. § Pt. 404, Subpt. P, App. 1,
Listing 1.00B2a, b(1). Also, in order to be considered disabled,
an individual's impairment must be "of such severity that he is
not only unable to do his previous work but cannot . . . engage
in any other kind of substantial gainful work which exists in
the national economy."  42 U.S.C. § 423(d)(2)(A).

[8] See Dobson v. Astrue, 267 F. App'x 610, 612 (9th Cir. 2008)
(holding "ALJ erroneously treated as dispositive the fact that
[the claimant] was not medically required to use an assistive
device; noting that "while the required use of a two-handed
assistive device is *independently sufficient* to establish
ineffective ambulation, ineffective ambulation may also be
established if the claimant otherwise meets the definition and
examples set forth in this Listing" and comparing Revised
Medical Criteria for Determination of Disability,
Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010,
58027 (Nov. 19, 2001)("The explanation is intended to mean that
individuals who can only walk with the aid of hand-held
assistive devices requiring the use of both upper extremities
would meet the definition of inability to ambulate
effectively."), with id. at 58013 ("[I]f someone who uses one
cane or crutch is otherwise unable to effectively ambulate, the
impairment(s) might still meet or equal a listing."), and id. at
58026-27 ("The criteria do not require an individual to use an
assistive device of any kind.... [The] explanation and examples
should make it clear that this applies to anyone who cannot walk
adequately."), and id. at 58027 ("[W]e recognize that
individuals with extreme inability to ambulate do not
necessarily use assistive devices.... Furthermore, we hope it is
clear that the criteria are not intended to exclude all but
those confined to wheelchairs.")).

is one of the examples listed in Section 1.00B2b(2).  Section
1.00B2a states that "functional loss . . . is . . . based on the
medical evidence and other evidence in the case record,
generally without developing additional evidence about the
individual's ability to perform the specific activities listed
as examples . . . ."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §
1.00B2a.  See also Cowger v. Astrue, No. 2:10 CV 41, 2011 WL
220218, at *4 (N.D.W. Va. Jan. 21, 2011) (finding that the ALJ
was not required to develop an example of ineffective ambulation
under section 1.00B2b(2) and "properly relied upon the
plaintiff's testimony, Function Report, and her treating
physician's documentation to conclude that the plaintiff could
effectively ambulate").  However, the situation is different
when there is a treating physician's opinion that the plaintiff
has an inability to perform one of the specific activities
listed as an example.  In this case, we have the treating
physician's opinion that the plaintiff was unable to walk a
block at a reasonable pace on rough or uneven surfaces and this
would have been dispositive if substantiated by the evidence
because this is a listed example.  While an ALJ "need not []
specifically address[] every piece of evidence . . . probative
evidence . . . should not go unexplained."  Dunham v. Astrue,
603 F. Supp. 2d 13, 20-21 (D.D.C. 2009) (noting that the
judiciary can scarcely perform its review function without some

indication, not only of what evidence was credited, but also whether other evidence was rejected rather than simply ignored). Because the ALJ did not mention the treating physician's opinions, the treating physician rule is at issue.

### B.   The Treating Physician Rule

"[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) (holding that "[a] treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician").  "The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion."[9]  Schrack v.

---

[9] In step three the ALJ notes the fact that the plaintiff "does not require the use of a cane" to support his conclusion that

Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02CV103 (WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)).  It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record contained conflicting opinions on the same medical condition."  Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)).

In determining the amount of weight to give to a medical opinion, the ALJ must consider several factors: the examining relationship, the treatment relationship (the length, the frequency of examination, the nature and extent), evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors. 20 C.F.R. § 404.1527.  In the Second Circuit, "all of the factors cited in the regulations" must be considered to avoid legal error.  Schaal v. Apfel 134 F.3d 496, 504 (2d Cir. 1998).

Failure to provide "good reasons"[10] for not crediting the opinion of a claimant's treating physician is a ground for

the plaintiff can ambulate effectively for purposes of Listing 1.02 (R. 15).  If the source of that opinion is the treating physician's MSS (see R. 774, 785), he should note this on remand if it remains relevant.

[10] The plaintiff argues that testimony regarding activities of daily living such as caring for himself and his mother cannot provide "good reason" to reject Dr. Giannini's ambulation opinions.  "[I]t is well-settled that '[s]uch activities do not

remand. <u>Schaal v. Apfel</u>, 134 F.3d 496, 505 (2d Cir. 1998).
. . . . The requirement of reason-giving exists, in part, to
let claimants understand the disposition of their cases,
even — and perhaps especially — when those dispositions are
unfavorable. A claimant . . . who knows that her physician
has deemed her disabled, might be especially bewildered
when told by an administrative bureaucracy that she is not,
unless some reason for the agency's decision is supplied.
<u>See</u> Jerry L. Mashaw, Due Process in the Administrative
State 175-76 (1985).

<u>Snell v. Apfel</u>, 177 F.3d 128, 133-34 (2d Cir. 1999).

[A]n ALJ cannot reject a treating physician's diagnosis
without first attempting to fill any clear gaps in the
administrative record. <u>See</u> <u>Schaal</u>, 134 F.3d at 505 ("[E]ven
if the clinical findings were inadequate, it [i]s the ALJ's
duty to seek additional information from [the treating
physician] sua sponte."); <u>see also</u> <u>Hartnett v. Apfel</u>, 21 F.
Supp. 2d 217, 221 (E.D.N.Y. 1998) ("[I]f an ALJ perceives
inconsistencies in a treating physician's reports, the ALJ
bears an affirmative duty to seek out more information from
the treating physician and to develop the administrative
record accordingly"). In fact, where there are deficiencies
in the record, an ALJ is under an affirmative obligation to
develop a claimant's medical history "even when the
claimant is represented by counsel or . . . by a
paralegal." <u>Perez</u>, 77 F.3d at 47; <u>see also</u> <u>Pratts</u>, 94 F.3d
at 37 ("It is the rule in our circuit that 'the ALJ, unlike
a judge in a trial, must [] affirmatively develop the
record' in light of 'the essentially non-adversarial nature
of a benefits proceeding.'[. . . ].") (citations omitted)

<u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. 1999).

---

by themselves contradict allegations of disability,' as people
should not be penalized for enduring the pain of their
disability in order to care for themselves." <u>Knighton v.
Astrue</u>, 861 F. Supp. 2d 59, 69 (N.D.N.Y. 2012)(remanded because
ALJ prematurely found plaintiff's contentions not fully credible
due to ability "to perform daily activities like caring for
pets, preparing simple meals, driving a vehicle, and helping
with household chores" and citing <u>Woodford v. Apfel</u>, 93 F. Supp.
2d 521, 529 (S.D.N.Y. 2000) and <u>Balsamo v. Chater</u>, 142 F.3d 75,
81 (2d Cir. 1998) ("We have stated on numerous occasions that 'a
claimant need not be an invalid to be found disabled' under the
Social Security Act.")).

In determining when there is "inadequate development of the record, the issue is whether the missing evidence is significant." Santiago v. Astrue, 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing Pratts v. Chater, 94 F.3d 34, 37–38 (2d Cir. 1996)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 129 S. Ct. 1696, 1706 (2009). The ALJ "does not have to state on the record every reason justifying a decision." Brault v. Social Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012). "'Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted.'" Id. (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)). In addition, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." Id. An ALJ must develop the record, Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996), but "'where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history,[11]

---

[11] A "[c]omplete medical history" is defined as "the records of [] medical source(s) covering at least the 12 months preceding the month in which" the plaintiff filed his application. 20 C.F.R. § 404.1512 (d)(2). "If applicable, . . . for the 12-month period prior to [] the month . . . last insured for disability insurance benefits . . ." Id. The plaintiff filed his claim July 19, 2011. The record includes Dr. Giannini's records dated 1/1/06 to 8/18/11 (R. 470-710), 9/6/11 to 3/13/12 (R. 748-69) and two versions of the MSS dated 9/26/13 (R. 773-79, 784-88), covering more than 12 months prior

the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'" Lowry v. Astrue, 474 F. App'x. 801, 804 (2d Cir. 2012) (quoting Rosa v. Callahan, 168 F.3d 72, 79 n.5 (2d Cir. 1999)).

> Gaps in the administrative record warrant remand for further development of the record. Sobolewski v. Apfel, 985 F. Supp. 300, 314 (E.D.N.Y.1997); see Echevarria v. Secretary of Health & Hum. Servs., 685 F.2d 751, 755-56 (2d Cir. 1982). . . .
>
> The ALJ must request additional information from a treating physician . . . when a medical report contains a conflict or ambiguity that must be resolved, the report is missing necessary information, or the report does not seem to be based on medically acceptable clinical and diagnostic techniques. Id. § 404.1512(e)(1). When "an ALJ perceives inconsistencies in a treating physician's report, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly," Hartnett, 21 F. Supp. 2d at 221, by making every reasonable effort to re-contact the treating source for clarification of the reasoning of the opinion. Taylor v. Astrue, No. 07-CV-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008)[(holding that the ALJ erred in failing to re-contact the treating source for clarification where ALJ gave little weight to the opinion because objective clinical evidence in the record did not support the treating physician's conclusion that plaintiff was "totally disabled.")]

Toribio v. Astrue, No. 06CV6532(NGG), 2009 WL 2366766, at *8-*10 (E.D.N.Y. July 31, 2009) (holding that the ALJ who rejected the treating physician's opinion because it was broad, "contrary to objective medical evidence and treatment notes as a whole", and inconsistent with the state agency examiner's findings had an

---

to both the date the plaintiff filed his application as well as the date on which he was last insured, i.e., December 11, 2011.

affirmative duty to re-contact the treating physician to obtain clarification of his opinion that plaintiff was "totally incapacitated").

In Schaal v. Apfel, 134 F.3d 496 (2d Cir. 1998), the court held that the lack of specific clinical findings in the treating physician's report did not, by itself, provide "good reason" justifying the ALJ's failure to credit the physician's opinion. Id. at 505.  The court stated that even if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from the treating physician sua sponte.  Id. (citing Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996)).

In Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998), the court remanded the case to the trial court to consider the claimant's contention that in light of Schaal the ALJ should have acted affirmatively to seek out clarifying information concerning perceived inconsistencies between a treating physician's reports.  See id. at 118-19.  The court reasoned that the doctor might have been able to provide a medical explanation for the plaintiff's condition.  Likewise, the doctor might have been able to offer clinical findings in support of his conclusion.  The treating physician's failure to include this type of support for the findings in his report did not mean that such support did not exist; he might not have provided this information in the report because he did not know

that the ALJ would consider it critical to the disposition of the case.  See id.

In this case, Dr. Giannini's MSS lacked the medical and clinical support for potentially dispositive opinions (i.e., the plaintiff could walk zero minutes and could not walk a block at a reasonable pace on rough or uneven surfaces), which was recognized by the ALJ[12] and the state agency medical consultants.[13]  As in Shaal, the lack of specific clinical findings do not provide, by themselves "good reason" to reject a treating physician's opinions.  See Toribio, 2009 WL 2366766, at *10; Clark, 143 F.3d at 118; Taylor, 2008 WL 2437770, at *3. Here, as in Toribio, Clark and Taylor, the ALJ had an affirmative duty to re-contact the treating source sua sponte to seek more information, get clarification of the reasoning, and develop the record accordingly.  Failure to include this type of support for the findings does not mean that such support does not exist.  See Toribio, 2009 WL 2366766, at *10; Clark, 143 F.3d at 118; Taylor, 2008 WL 2437770, at *3.  Failure to address this issue is potentially harmful because if Dr. Giannini can

---

[12] The ALJ noted that he "affords little weight to Dr. Giannini['s] opinions as they are . . . lacking in basis." (R. 24)

[13] State agency medical consultants Dr. Tracy on 1/27/12 with Dr. Khan's review upon reconsideration on 6/19/12 concluded under the heading "Weighing of Opinion Evidence" that "[t]here is no indication that there is medical or other opinion evidence". (R. 87, 125.)

provide medical and clinical support for her opinion that the plaintiff cannot walk a block at a reasonable pace on rough or uneven surfaces and can explain apparent inconsistencies in her reports and between her reports and the conclusions of the state agency medical consultants, the plaintiff would satisfy the requirements of the Listing.

On remand, the ALJ should seek additional information from Dr. Giannini and clear up any inconsistencies. At step three, the ALJ should identify the treating physician opinions credited, rejected or ignored, including the opinion that the plaintiff could not walk a block at a reasonable pace on an uneven surface; specifically address each of the factors required to be utilized in weighing the relevant opinions; specifically explain the weight actually given to each; and provide "good reason" for rejecting opinions, if appropriate. If the ALJ concludes that the plaintiff fails to meet or equal the listed impairment and proceeds to step four, he should re-evaluate his RFC determination consistent with this ruling.[14]

---

[14] At step four, the ALJ identified and generally addressed the factors required to be utilized in weighing, and gave reasons for rejecting, the treating physician's RFC opinions. The ALJ also substantiated his conclusion as to the inconsistencies with examples but did not do so with respect to the lack of evidentiary basis. If the ALJ proceeds to step four after a rehearing, he should specifically address all factors used to weigh Dr. Giannini's RFC opinions and substantiate any conclusions, including that there is a basis for her RFC opinions, if appropriate.

**IV.   CONCLUSION**

For the reasons set forth above, the plaintiff's motion for an order remanding the Commissioner's decision (Doc. No. 12) for a rehearing is hereby GRANTED and the Commissioner's motion to affirm that decision (Doc. No. 13) is hereby DENIED.

The Clerk shall remand this case to the Commissioner for rehearing consistent with this ruling and close the case.

It is so ordered this 16th day of February 2017, at Hartford, Connecticut.

/s/AWT
_____
Alvin W. Thompson
United States District Judge
